## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| PTGi International Carrier Services, Inc.[1], | Case No. 24-12603 (TMH) |
| Alleged Debtor. | |

## MEMORANDUM OPINION

Before the court is alleged debtor PTGi International Carrier Services, Inc.'s ("PTGi") Motion to Dismiss the Involuntary Petition (the "Motion to Dismiss").[2] PTGi requests that this Court either dismiss the involuntary petition under 11 U.S.C. § 303 because the Petitioning Creditors filed it in bad faith or abstain from the proceeding under 11 U.S.C. § 305(a). PTGi also seeks an award of attorneys' fees from the petitioning creditors. The petitioning creditors argue that the case should not be dismissed. They also argue that the Court should not consider Amped I, LLC and Amped II, LLC's (collectively "Arena") Joinder to PTGi's Motion to Dismiss.[3]

This Court finds that petitioning creditor Acmetel USA, Inc. ("Acmetel") filed the petition in bad faith, and therefore dismisses the petition. Additionally, because the dismissal of Acmetel leaves only two petitioning creditors, the numerosity

---

[1] The Alleged Debtor in this case is PTGi International Carrier Services, Inc. Proposed Debtor's federal tax identification number is unknown. The Alleged Debtor's address is 125 Park Ave, 25th Floor, New York, NY 10017.

[2] PTGi International Carrier Services, Inc.'s (I) Response to the Involuntary Petition and (I) Motion for Entry of an Order (A) Dismissing the Involuntary Petition Under Section 303 or, Alternatively, Dismissing the Involuntary Petition or Abstaining from Entering the Order Granting the Involuntary Petition Under Section 305 and (B) Awarding Damages Under Section 303(I) of the Bankruptcy Code [D.I. 45].

[3] D.I. 46.

requirement is no longer fulfilled, and on that additional basis, the petition is dismissed.[4]  Further, this Court awards attorneys' fees to PTGi.

## I.     Background

### a.  Parties

PTGi is a Delaware corporation that, before ceasing operations and beginning its winddown, traded in telecommunications minutes. Charge Enterprises, Inc. ("Charge") an electric vehicle company, is PTGi's parent.[5]

There are three petitioning creditors: Acmetel, Omantel International ("Omantel"), and TM Technology Services Sdn. Bhd ("TM") (collectively, the "Petitioning Creditors"). Each of the Petitioning Creditors had contracts to provide telecommunications minutes to PTGi. On November 12, 2024, the date the Petitioning Creditors filed the involuntary petition, PTGi owed Acmetel $6,727,272.98, TM $11,271,903.42, and Omantel $11,980,720.91. PTGi does not contest these amounts.

Arena is a secured creditor of PTGi. On May 19, 2021, Arena obtained a lien on certain of PTGi's assets in consideration for money Arena loaned to Charge ("Charge's Loan Agreement").[6] The parties amended and restated their Security Agreement on December 17, 2021. On the same day, the parties entered into a Guaranty Agreement, under which PTGi guaranteed repayment of Charge's debt.[7]

---

[4] Because the involuntary petition is dismissed, this Court does not need to address PTGi's request for abstention.

[5] Charge is the debtor in a case pending in this Court (Case No. 24-10349 (TMH)).

[6] D.I. 45 Ex. 4.

[7] Id. Ex. 5.

Arena filed a UCC-1 financing statement on July 2, 2021.[8] Arena, PTGi, and PNC Bank (where PTGi's cash is deposited) entered into a Deposit Account Control Agreement (the "DACA") on March 1, 2024.[9] PTGi's secretary and corporate controller, Mr. Matthew Chee, testified at the hearing on this matter that PTGi benefitted from this agreement in two ways.[10] First, PTGi and Charge had a shared services agreement, so Charge absorbed certain costs that PTGi would have had to pay but did not.[11] Second, Charge was able to use the funds to grow its business, thus helping PTGi's business grow.[12]

### b. PTGi's Winddown and Subsequent Litigation

On November 30, 2023, PTGi's board of directors decided to cease providing all services to customers effective December 1, 2023, and wind down the business.[13] PTGi no longer has any employees or operations.[14] Its only remaining assets are a PNC Bank account containing about $964,000 and three uncashed checks totaling about $166,000.[15]

On December 20, 2023, Acmetel initiated a lawsuit against PTGi in the Unites States District Court for the Southern District of New York (the "District Court") to recover the debts owed to it.[16] Acmetel asserted causes of action for

---

[8] Motion for Relief from Stay [D.I. 8] Ex. B.
[9] *Id.* Ex. C.
[10] D.I. 61 at 12, 14.
[11] *Id.* at 14.
[12] *Id.*
[13] Statement of PTGi International Carrier Services, Inc. in Connection with Amped I, LLC and Amped II, LLC's Motion for Relief from the Automatic Stay, 1 [D.I. 17].
[14] 2/20/2025 Tr. at 16.
[15] D.I. 46 at 2.
[16] Case No. 1:23-cv-11027-LJL.

breach of contract and unjust enrichment.[17] Acmetel and PTGi entered into a

stipulated judgment on April 23, 2024, which the District Court entered that day,

and on May 24, 2024, the court entered an abstract of judgment in Acmetel's

favor.[18] However, Acmetel never obtained an execution or enforcement order to

perfect a judgment lien.[19]

On March 7, 2024, Charge commenced a voluntary chapter 11 case in this

Court.[20] Because of Charge's default on its payments to Arena and the lien PTGi

granted Arena under Charge's Loan Agreement, Arena asserts a more than $196

million claim against PTGi.[21] Arena holds an uncontested first-priority security lien

in PTGi's remaining assets.[22] Arena filed a notice of strict foreclosure on PTGi's

assets.[23] Acmetel objected to a strict foreclosure by letter to Arena on July 10,

2024.[24] Thereafter and given Acmetel's objection, Arena shifted to a public

foreclosure on PTGi's assets and issued another notice thereof.[25] Arena conducted a

public foreclosure under Article 9 of the New York Uniform Commercial Code on

August 9, 2024.[26]

On June 7, 2024, Acmetel served an Information Subpoena and Restraining

Notice upon PNC, requiring it not to transfer any funds held in PTGi's account that

---

[17] D.I. 47 at 11.
[18] *Id.*; D.I. 45 at 6-7.
[19] D.I. 45 at 5.
[20] D.I. 47 at 9.
[21] D.I. 46 at 2.
[22] *Id.*
[23] PTGi Ex. 26-29.
[24] D.I. 47 Ex. B.
[25] *Id.* Ex. C; D.I. 45 at 12; PTGi Ex. 26-29.
[26] D.I. 45 at 12.

is subject to the DACA.[27] PNC demanded that Arena obtain a court order lifting the Restraining Notice before releasing the funds.[28] On July 30, 2024, Arena filed a motion to intervene in Acmetel's New York action and a motion to quash or vacate the Restraining Notice to honor its first priority lien.[29]

On October 10, 2024, the District Court issued an Opinion and Order granting Arena's motion to vacate.[30] It found that because Arena submitted proof of a valid first-priority, perfected lien on PTGi's assets, Arena had a pre-existing right to the money held at PNC.[31] It explained that Acmetel had never obtained an order to enforce its previous judgment, meaning it is an unsecured creditor.[32] Meanwhile, Arena had perfected its lien with a financing statement and a DACA and subsequently attempted to enforce its lien through the foreclosure action.[33] Further, while the court said it was not considering equitable subordination, it opined that Acmetel had not met any of the requirements that would be necessary to successfully request equitable subordination.[34] The court explained that Acmetel's allegations of inequitable conduct by Arena were "not sufficient," and "conclusory[,] and unpersuasive[.]"[35] Thus, granting Acmetel's request for equitable subordination

---

[27] PTGi Ex. 26-29.
[28] *Id.*
[29] *Acmetel USA LLC v. PTGi Int'l Carrier Servs., Inc.*, No. 23-CV-11027 (LJL), 2024 WL 4467174, at *2 (S.D.N.Y. Oct. 10, 2024).
[30] *Id.* at *9.
[31] *Id.* at *8.
[32] *Id.* at *5.
[33] *Id.* at *2.
[34] *Id.* at *7.
[35] *Id.*

would be "subvert[ing] the entire priority scheme."[36] Accordingly, the court vacated the Restraining Notice.[37]

Acmetel notified Arena, PTGi, and PNC that it would appeal, and requested that PNC maintain a restriction on the funds until such litigation was completed.[38] However, on the last day to file a notice of appeal, Acmetel and the other Petitioning Creditors instead filed the involuntary petition.[39]

On January 10, 2025, PTGi filed the Motion to Dismiss. The Petitioning Creditors objected, and on February 20, 2025, this Court conducted an evidentiary hearing on the Motion to Dismiss. At the hearing, PTGi and the Petitioning Creditors introduced various exhibits without objection. PTGi also presented the testimony of Mr. Chee. The Petitioning Creditors presented no witnesses.

## II.   Analysis

### a.   Arena's Joinder

As an initial matter, this Court determines that it may consider Arena's Joinder to PTGi's Motion to Dismiss the Involuntary Petition.[40] Acmetel is correct that a creditor does not have standing to contest an involuntary bankruptcy filing.[41] However, Arena does not seek to directly contest the bankruptcy filing; rather, it merely joins PTGi's motion. Despite non-petitioning creditors' lack of standing to

---

[36] *Id.*
[37] *Id.* at *8.
[38] D.I. 45 at 6.
[39] *Id.* at 11.
[40] D.I. 46.
[41] 11 U.S.C. § 303; *see In re QDN, LLC*, 363 F. App'x 873, 875-76 (3d Cir. 2010) ("Congress chose to preclude creditors from opposing involuntary petitions because such opposition invariably was to protect a preference or to gain some unfair advantage at the expense of other creditors, contrary to the policy of providing equitable distribution of assets among all creditors.").

contest the petition, other courts have allowed this type of joinder, albeit on an uncontested basis.[42] Courts have also considered a non-petitioning creditor's allegations that petitioning creditors have acted in bad faith.[43] Furthermore, Acmetel did not file a motion to strike Arena's Joinder and instead simply raised the argument in the course of briefing on the Motion to Dismiss. Nevertheless, consideration of Arena's Joinder does not affect the analysis of the Motion to Dismiss, and the Court has not relied on Arena's arguments in reaching today's decision.

### b. Acmetel's Bad Faith

In the Motion to Dismiss, PTGi argues that the Petitioning Creditors filed the petition in bad faith because the factors enumerated by the United States Court of Appeals for the Third Circuit in *In re Forever Green Athletic Fields, Inc.*[44] weigh towards a finding of bad faith. The Petitioning Creditors counter that they filed the petition in the interests of all creditors rather than to obtain a disproportionate advantage, the case would serve a bankruptcy purpose and would benefit from the bankruptcy forum because of the availability of a chapter 7 trustee to conduct investigations. They also allege there were preferential and fraudulent transfers among PTGi, Arena, and Charge prior to the filing of the petition. When pressed at oral argument on what tools a chapter 7 trustee would possess that are not

---

[42] *See In re Amanat*, 321 B.R. 30, 33 (Bankr. S.D.N.Y. 2005) (allowing a non-petitioning creditor to join in the debtor's motion to dismiss the involuntary petition); *In re O'Reilly & Collins*, No. 12-33016DM, 2013 WL 4548260, at *1 (Bankr. N.D. Cal. Aug. 26, 2013) (same).

[43] *In re Houston Reg'l Sports Network, L.P.*, 505 B.R. 468 (Bankr. S.D. Tex. 2014) (finding that a non-petitioning creditor did not have standing to contest the involuntary petition but considering its allegations of bad faith on the part of the petitioning creditors).

[44] 804 F.3d 328 (3d Cir. 2015).

available outside of bankruptcy, the Petitioning Creditors pointed to equitable subordination.[45] This Court finds that Acmetel filed the involuntary petition in bad faith because Acmetel is attempting to use it as a litigation tactic, to obtain a disproportionate advantage for themselves, and as a substitute for customary debt-collection procedures, and because the filing had suspicious timing.

The Bankruptcy Code establishes certain requirements that an involuntary petition must satisfy to proceed if a proposed debtor has 12 or more creditors: 1) there must be three or more petitioning creditors; 2) each petitioning creditor must hold a claim against the debtor that is not contingent as to liability or the subject of a bona fide dispute; and 3) the claims must aggregate at least $15,325 more than the value of liens on the debtor's property.[46] PTGi does not contest that these elements are satisfied. Courts presume that petitioning creditors file an involuntary petition in good faith and that the involuntary petition is meritorious.[47]

However, the Third Circuit has held that bad faith provides a basis to dismiss an involuntary petition even where the alleged debtor meets the statutory requirements for an involuntary petition and is not paying its debts as they become due.[48] In *In re Forever Green Athletic Fields, Inc.*, the Third Circuit set forth the test for determining whether a petitioning creditor has filed an involuntary petition in bad faith.[49] The court adopted a "totality of the circumstances" approach to

---

[45] 2/20/2025 Tr. 60:2–24 [D.I. 61].
[46] 11 U.S.C. § 303; *see also In re Forever Green*, 804 F.3d at 333 (reiterating section 303's requirements).
[47] *In re Forever Green*, 804 F.3d at 335.
[48] *Id.* at 333-34.
[49] *Id.* at 336.

reviewing the good faith of an involuntary petition.[50] It explained that some factors to consider in making such a determination include

> whether: the creditors satisfied the statutory criteria for filing the petition; the involuntary petition was meritorious; the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing; there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets; the filing was motivated by ill will or a desire to harass; the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same; the filing was used as a tactical advantage in pending actions; the filing was used as a substitute for customary debt-collection procedures; and the filing had suspicious timing.[51]

To dismiss the petition based on the bad faith of a petitioning creditor, the debtor must show bad faith by a preponderance of the evidence.

Here, while PTGi admits that the involuntary petition meets the statutory requirements, it is not paying its debts as they become due, and the petition is meritorious, various factors indicate that Acmetel filed the petition in bad faith. First, Acmetel is attempting to use the bankruptcy process as a litigation tactic in the wake of its loss in the New York Action. Courts (including this Court) have held that even if petitioning creditors have met the numerosity requirement, one of the petitioning creditors may have spearheaded the involuntary petition and convinced enough creditors to join their petition.[52] In *In re Metrogate, LLC*,[53] this Court found that while the petitioning creditors met the numerosity requirement, the dispute

---

[50] *Id.*

[51] *Id.*

[52] *See, e.g., In re Metrogate, LLC*, No. 15-12593 (KJC), 2016 WL 3150177, at *14 (Bankr. D. Del. May 26, 2016); *In re Spade*, 258 B.R. 221, 234-35 (Bankr. D. Colo.), *aff'd*, 269 B.R. 225 (D. Colo. 2001); *In re Starlite Houseboats, Inc.*, 426 B.R. 375, 388 (Bankr. D. Kan. 2010).

[53] 2016 WL 3150177.

was functionally a two-party dispute.[54] It explained that there was "a single recalcitrant creditor who is more concerned with a collection action than with the alleged debtor's well-being as a going concern."[55] It continued to explain that avoiding this kind of recalcitrant debtor is a strong reason behind the numerosity requirement.[56]

Similarly, here, while Acmetel recruited two other creditors to join the involuntary petition, doing so appears to have been to meet the technical requirement of numerosity. Like the creditors in *In re Metrogate, LLC*, neither Omantel nor TM took any action to pursue its debts prior to the filing of this involuntary petition.[57] Further, while all three Petitioning Creditors have been responsive to the proceedings, they also all have one counsel; Omantel and TM have not participated individually before this Court in any way that would differentiate them or show that they participated for any reason other than to meet  the numerosity of creditors requirement under Bankruptcy Code section 303(b).[58] Even the Petitioning Creditor's responses on this matter focus on Acmetel's role in the proceedings by speaking at length about Acmetel's New York Action and only mentioning Omantel and TM to introduce them as parties, briefly describe their

---

[54] *Id.* at *14.

[55] *Id.*

[56] *Id.* at *14, n.61 ("'[The numerosity] requirements are based on strong policy considerations, which include the fear that one or two recalcitrant creditors might file an involuntary case to harass a debtor.' 2 Collier on Bankruptcy ¶ 303.14[2] (citing *In re Tichy Elec. Co.,* 332 B.R. 364, 377 (Bankr. N.D. Iowa 2005)).").

[57] D.I. 61 at 17.

[58] D.I. 47 at 1, 26.

contracts with PTGi, and say that their presence precludes the possibility that this proceeding is a litigation tactic by Acmetel.[59]

Second, Acmetel filed the petition in bad faith as a substitute for debt-collection procedures and to gain a disproportionate advantage for themselves rather than to protect against other creditors doing the same. Acmetel had already litigated its dispute with Arena in the Southern District of New York, and the District Court ruled against Acmetel.[60] It is true that Acmetel and PTGi entered into a stipulated judgment, but Acmetel failed to take any action to enforce that judgment.[61] In doing so, Acmetel remained an unsecured creditor. The Southern District of New York then confirmed that Arena had an uncontested first-priority, perfected security lien on PTGi's assets and that Acmetel had failed to take action to enforce the judgment.[62] Acmetel told Arena and PTGi that it planned to appeal that ruling, but instead of pursuing an appeal, Acmetel decided to try its luck here.[63] Acmetel began its debt-collection process in the Southern District of New York. Its failure to successfully obtain a first-priority lien in that forum does not justify the change to this forum and use of the bankruptcy process except to seek a disproportionate advantage for Acmetel.[64]

---

[59] *See* D.I. 47 (Petitioning Creditors' Response).
[60] *Acmetel USA LLC*, 2024 WL 4467174, at *9.
[61] *Id.* at *8.
[62] *Id.* at *5.
[63] D.I. 45 at 6.
[64] *Cf. In re Park Place Dev. Primary, LLC.*, No. 21-10849 (CSS), 2021 WL 5072976, at *11-12 (Bankr. D. Del. Nov. 2, 2021) (finding that the petitioning creditors filed the involuntary petition to stay the foreclosure action, so they did not have to file answers, and in hopes of expediting a resolution, meaning the petitioning creditors filed the petition for a disproportionate advantage and as a substitute for debt-collection).

Third, the timing of the filing is suspect. The Petitioning Creditors filed the involuntary petition on the last day that Acmetel could have filed an appeal in the New York Action.[65] This timing further supports the conclusion that Acmetel is attempting to use the bankruptcy process as a litigation tactic, for a disproportionate advantage, and as a substitute for debt-collection procedures. Courts have found the timing suspicious in cases where petitioning creditors file the involuntary petition multiple days or even weeks before a filing is due in a separate action.[66] Under these criteria, the timing of Petitioning Creditors' filing the same day Acmetel's notice of appeal was due is suspicious.

Acmetel's counterarguments fail to rebut the weight of these factors. Acmetel attempts to argue that it is pursuing the involuntary filing for the benefit of all creditors. The Petitioning Creditors' counsel told this Court that other creditors have contacted them regarding potentially joining the involuntary petition but did not seek to introduce any evidence of such communications.[67] Review of the docket shows that no other creditors have thus far sought redress for their rights against PTGi since the commencement of the case more than four months ago. Additionally, Acmetel claims that it is pursuing the involuntary filing to prevent Arena from obtaining a disproportionate advantage, but Arena's first-priority, perfected lien is

---

[65] D.I. 45 at 6.
[66] *In re Forever Green*, 804 F.3d at 337 (finding the timing of the filing suspicious when it was two weeks before a brief in another action was due); *In re Park Place*, 2021 WL 5072976, at *12 (finding the timing of filing suspicious when it was two days prior to a deadline to respond in another action).
[67] D.I. 47 at 3.

12

not a disproportionate advantage where it was validly obtained and upheld by a court of competent jurisdiction.[68]

Acmetel next contends that the circumstances of the case justify a chapter 7 trustee to investigate PTGi's activities, its relationship with Arena, and possible preferential or fraudulent transfers, and it contends that the estate would be served by this Court's ability to order equitable subordination of Arena's claim. While this Court does not decide today the merits of whether preferential or fraudulent transfers existed between PTGi and Arena, Acmetel has not even presented sufficient evidence to suggest that a chapter 7 trustee investigating these transactions would be beneficial to the estate. On the contrary, at the hearing on this matter, Mr. Chee provided testimony that at all relevant times, Arena and PTGi had an arms-length relationship.[69] He testified that no one from Arena served as a director or officer of or asserted any control over PTGi or its parent, Charge.[70] Further, Arena never held any interest in PTGi, and while it held interest in Charge, that interest was capped at 9.99% in nonvoting stock.[71] All of this evidence is unrebutted.

Similarly, Acmetel has not provided sufficient evidence to suggest that the estate would benefit through the Bankruptcy Court's power to impose the remedy of equitable subordination. As in the New York Action, Acmetel has only made

---

[68] *Acmetel USA LLC*, 2024 WL 4467174, at *5.
[69] 2/20/25 Tr. at 14-15.
[70] *Id.*
[71] D.I. 45 at 3; PTGi Ex. 22 (reporting Arena's equity ownership in Charge as 9.99% at the time the parties entered into DACA); PTGi Ex. 23 (limiting Arena's potential equity ownership in Charge to 9.99%).

unsubstantiated allegations to suggest that these conclusory statements may be true.[72] While it has had months since the District Court's opinion, Acmetel did not come forward with any evidence at all that would suggest that there is any basis upon which a chapter 7 trustee could pursue claims of equitable subordination so as to justify use of the bankruptcy process. Proceeding further would not serve a proper bankruptcy purpose, further supporting the decision to dismiss the petition.[73]

PTGi has shown by a preponderance of the evidence that Acmetel filed the involuntary petition in bad faith, so this Court dismisses the involuntary petition. While there are still two other petitioning creditors, the Bankruptcy Code requires at least three petitioning creditors. The Petitioning Creditors assert that other creditors have contacted counsel about joining the petition, but the time to do so has passed.[74] Therefore, even if Omantel and TM were to find another creditor to join the petition at this point, it would be too late.[75] The petition is dismissed.

### c. Attorneys' Fees

PTGi requests that this Court award its attorney's fees. 11 U.S.C. § 303(i) provides that

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the

---

[72] *Acmetel USA LLC*, 2024 WL 4467174, at *8.

[73] *In re Silverman*, 230 B.R. 46, 53 (Bankr. D.N.J. 1998) (finding that the petitioning creditor sought to gain a litigation advantage, which meant the intent of the involuntary petition was to serve an improper purpose).

[74] 11 U.S.C. § 303(c) (delineating that other creditors may join the petition after it has been filed but before the case is dismissed or relief is ordered).

[75] *In re Forever Green*, 804 F.3d at 337 (holding that while there were two creditors remaining whose filing the court had not found to be in bad faith, they did not meet the numerosity requirement, and no more could join at the late stage in the proceedings).

right to judgment under this subsection, the court may grant judgment— . . .

(2) against any petitioner that filed the petition in bad faith, for—

(A) any damages proximately caused by such filing[.][76]

Because Acmetel filed the involuntary petition in bad faith, this Court awards against Acmetel and in favor of PTGi attorneys' fees and costs incurred in connection with this filing, without prejudice to PTGi's ability to seek punitive damages or any damages proximately caused by the involuntary petition, if any. PTGi should not have to bear the costs of Acmetel's bad faith.

## CONCLUSION

PTGi's Motion to Dismiss and its request for attorneys' fees and costs are granted. The parties are directed to settle an appropriate form of order and submit it to this Court under certification of counsel within five business days of the entry of this Opinion.


Dated: March 14, 2025                    Thomas M. Horan
Wilmington, Delaware                     United States Bankruptcy Judge

---

[76] 11 U.S.C. § 303(i).